UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

IDOLTHUS HUBBARD,

        Plaintiff,                           Case No. 2:23-cv-89

v.                                             Honorable Robert J. Jonker

UNKNOWN DUNHAM et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in

Munising, Alger County, Michigan. Plaintiff sues Mailroom Staff Unknown Dunham and Unknown Kienitz, Warden Sarah Schroeder, Unknown Party #1 named as John/Jane Doe Warden's Secretary, Unknown Party #2 named as John/Jane Doe Administrative Assistant, Unknown Party #3 named as John/Jane Doe Records Office Personnel, Unknown Party #4 named as John/Jane Doe Transfer Coordinator, Spruce Unit Resident Unit Manager Unknown Hubble, and Spruce Unit Program Coordinator Unknown Leffel. Plaintiff sues Defendants in their individual capacities.

In his amended complaint, Plaintiff alleges that on November 30, 2021, while confined at LMF, he filed a complaint in the Alger County District Court. On January 13, 2022, Plaintiff received a motion to compel arbitration and to dismiss from J-Pay Inc.'s attorney, Rhonda R. Stowers. Plaintiff received a notice of hearing on January 19, 2022, stating that the hearing was scheduled for February 23, 2022. However, on January 21, 2022, Plaintiff received notice that the hearing was adjourned to March 2, 2022. Plaintiff filed objections to the motion on February 2, 2022, and Attorney Stowers filed a response to the objections on February 24, 2022. (ECF No. 14, PageID.275.)

On March 1, 2022, Plaintiff was informed that Health Services wanted to swab him for a COVID-19 test. After testing negative, Plaintiff was ordered to pack up for a transfer the next day. Plaintiff immediately asked to speak to a sergeant because he had a hearing the next day. The unit officer again ordered Plaintiff to go pack up, stating that he was not aware of the court date. On March 2, 2022, before he was transferred from LMF, Plaintiff spoke to Defendant Leffel and explained that he had a scheduled motion hearing via Zoom and did not want to miss the hearing. Defendant Leffel told Plaintiff that was not his problem, and that Plaintiff would have to deal with it at his next stop. (*Id.*, PageID.276.)

Later that afternoon, Plaintiff arrived at KCF and immediately informed non-party Corrections Officer Ms. Orsborne about his missed Zoom hearing. Ms. Orsborne called the front desk to inquire about the hearing and was told that they did not have any knowledge of the hearing. Ms. Orsborne told Plaintiff to speak to non-party Prison Counselor Newmann, who also denied knowledge of the hearing and stated that she did not have Plaintiff's institutional file yet. (*Id.*)

On March 5, 2022, Plaintiff received his property and again asked Prison Counselor Newmann about the hearing. Newmann stated that she did not know anything about the hearing and that the matter should have been addressed prior to his transfer. (*Id.*) On March 7, 2022, Plaintiff sent kites to non-parties KCF Legal Affairs employee Lisa Geminick and to KCF Warden Mike Brown. Plaintiff also phoned the 93rd District Court Clerk Betty Holbrook to explain his failure to appear. (*Id.*)

On March 10, 2022, Plaintiff received mail from non-party KCF Administrative Assistant Jasmine Massey, stating:

> (KCF's) Warden Office did not receive anything advising us of any court hearing for you. I also checked with LMF and was advised they had no notice of hearing scheduled for you for this date (3/2/22). Last notice that LMF received was December 2, 2021, which indicated that case was resolved.

(*Id.*)

On March 18, 2022, Plaintiff phoned 93rd District Court Clerk Lynne Maki regarding that court's ruling on March 2, 2022, due to Plaintiff's inability to make an appearance. On March 20, 2022, Plaintiff wrote a letter to District Court Judge Charles C. Nebel explaining his failure to appear. (*Id.*) On July 9, 2022, Judge Nebel granted Plaintiff a video hearing to inform him that his failure to appear was the cause of his case being dismissed. On July 12, 2022, Plaintiff received a judgment of dismissal signed by Judge Nebel. (*Id.*)

In his amended complaint, Plaintiff states that Defendant Schroeder was ultimately responsible for making sure that Plaintiff could attend his hearing on March 2, 2022, and that Defendants Unknown Parties #1 and #2 failed in their responsibilities to note the scheduling of videoconferencing and to ensure that prisoners are able to attend court proceedings. Plaintiff asserts that Defendant Unknown Party #3 failed to place a detainer on Plaintiff when the prison received notice of Plaintiff's hearing and that Defendant Unknown Party #4 failed to manage Plaintiff's transfer so that he could attend his hearing. Plaintiff claims that Defendants Dunham and Kienitz retaliated against him by failing to properly log mail from the 93rd District Court, which resulted in Plaintiff being denied the right to attend his hearing on March 2, 2022. Finally, Plaintiff contends that Defendants Hubble and Leffel failed to complete their job duties adequately, which resulted in his inability to attend his hearing. (*Id.*, PageID.283–284.)

Plaintiff asserts that Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as costs.

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **First Amendment**

        **1.**    **Access to the Courts**

Plaintiff claims that Defendants interfered with this right to access the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25.

5

The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

6

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff attaches a copy of the complaint he filed in the Alger County District Court as an exhibit to his amended complaint. (ECF No. 14-1, PageID.294.) Plaintiff's complaint is entitled "Verified Civil Complaint for Constructive Fraud, Theft or Negligent Loss of Destruction of Property False Advertising and Violating the Michigan Consumer Protection Act MCL 445.901 et seq." (*Id.*) Plaintiff's state court complaint addresses problems associated with the JP6 tablet he purchased from J-Pay to use with the J-Pay Kiosk at LMF. (*Id.* at PageID.295-297.) It is clear from Plaintiff's complaint and the attachments thereto that the underlying cause of action in this case is not a direct appeal, an application for habeas corpus, or a civil rights action. Moreover, the motion to compel arbitration and dismiss filed by Defendant J-Pay in the underlying case states that Plaintiff agreed to arbitration as a condition of using the J-Pay tablet. (ECF No. 14-2, PageID.319.) Therefore, the dismissal of the underlying cause of action did not leave Plaintiff without a remedy since he continued to have the option of arbitration. Accordingly, for these reasons, Plaintiff fails to state a claim for denial of access to the courts.

   **2. Retaliation**

Plaintiff makes a conclusory assertion that Defendants Dunham and Kienitz retaliated against him by failing to properly log mail from the 93rd District Court, which resulted in Plaintiff being denied the right to attend his hearing on March 2, 2022. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

7

Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claims against Defendants Dunham and Kienitz are entirely conclusory. Plaintiff fails to allege any facts showing that they were motivated by a desire to retaliate against Plaintiff for engaging in protected conduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's retaliation claims are properly dismissed.

B.    **Fifth Amendment**

Plaintiff asserts that Defendants violated his rights under the Fifth Amendment. The Court notes that "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *see also Owens v. Trulock*, No. 1:18-CV-00167-GNS-HBB, 2020 WL 376658, at *3 (W.D. Ky. Jan. 23, 2020); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2005) ("Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause.") Defendants in this case are all state actors. Because this case does not involve any federal actors, the Fifth Amendment does not apply. Therefore, the Court will dismiss Plaintiff's Fifth Amendment claims.

C.    **Eighth Amendment**

Plaintiff states that Defendants acted with deliberate indifference in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states

to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff's claim that he was deprived of the opportunity to attend a hearing on a state court case related to the malfunctioning of a J-Pay tablet does not constitute the sort of extreme deprivation required to implicate the Eighth Amendment. *Id.* Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

### D. Fourteenth Amendment

Plaintiff asserts that Defendants' conduct in depriving him of the opportunity to attend his state court hearing violated his rights under the Fourteenth Amendment. As noted above, the subject matter of Plaintiff's court case was his J-Pay tablet, which apparently malfunctioned, resulting in the loss of certain content from the device. (ECF No. 14-1, PageID.295–297.) In addition, as noted above, Plaintiff apparently had the right to arbitrate the case pursuant to an arbitration agreement. (ECF No. 14-2, PageID.319.)

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff fails to allege facts showing that Defendants deprived him of life or liberty, and to the extent that that their conduct may have interfered in his pursuit of relief for the deprivation of his property, such claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth

10

Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, it is clear from the record that Plaintiff could have pursued his claim in arbitration and that he actually agreed to do so when he purchased the J-Pay tablet. Plaintiff does not allege any reason why arbitration would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Finally, to the extent that Plaintiff may be asserting a violation of his substantive due process rights under the Fourteenth Amendment, such a claim lacks merit. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL

11

7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation and access to courts claims. Thus, the standards applicable to that source, the First Amendment, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *Lewis*, 518 U.S. at 354; *Bounds*, 430 U.S. at 821 (1977); *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, Plaintiff's substantive due process claim will be dismissed.

E. **State law claims**

Plaintiff states that Defendants violated his state law rights. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for

a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

13

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   October 11, 2023                              /s/ Robert J. Jonker
                                                      Robert J. Jonker
                                                      United States District Judge